# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> ADAM B. SCHIFF, in his official capacity as Chairman of the U.S. House Permanent Select Committee on Intelligence, <br><br> and <br><br> U.S. HOUSE PERMANENT SELECT COMMITTEE ON INTELLIGENCE, <br><br> *Defendants*. | Case No. 1:19-CV-03790-BJH |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF HOUSE DEFENDANTS' MOTION TO DISMISS

DOUGLAS N. LETTER (D.C. Bar No. 2533492)
  *General Counsel*
TODD B. TATELMAN (VA Bar No. 66008)
  *Principal Deputy General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
douglas.letter@mail.house.gov

*Counsel for Chairman Adam Schiff and the House
  Permanent Select Committee on Intelligence*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION .............................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................. 1

ARGUMENT ...................................................................................................................... 3

    I.    This Court Lacks Jurisdiction Over the House Defendants Because Their Sovereign Immunity Has Not Been Waived ........................................................................ 4

    II.   This Court Lacks Jurisdiction over the House Defendants Under the Speech or Debate Clause ................................................................................................................. 5

    III.  Plaintiff Fails to State a Claim for which Relief Can Be Granted ................................ 11

        A.   FOIA Preempts the Plaintiff's Common Law Right of Access Claim ..................... 11

        B.   Plaintiff Is Not Entitled to Review the Subpoenas Because They Are Not "Public Records" ................................................................................................................ 12

CONCLUSION ................................................................................................................ 14

## TABLE OF AUTHORITIES

**Cases**  **Page(s)**

*Bogan v. Scott-Harris*,
 523 U.S. 44 (1998) ............................................................................................................... 10

*Brown & Williamson Tobacco Corp. v. Williams*,
 62 F.3d 408 (D.C. Cir. 1995) ................................................................................................. 9

*City of Milwaukee v. Illinois and Michigan*,
 451 U.S. 304 (1981) ............................................................................................................. 11

*Clark v. Library of Cong.*,
 750 F.2d 89 (D.C. Cir. 1984) ................................................................................................. 4

*Cofield v. United States*,
 64 F. Supp. 3d 206 (D.D.C. 2014) ......................................................................................... 4

*Ctr. for Nat. Sec. Studies v. U.S. Dep't of Justice*,
 331 F.3d 918 (D.C. Cir. 2003), *cert. denied*, 540 U.S. 1104 (2004) ............................... 11, 12

*Doe v. McMillan*,
 412 U.S. 306 (1973) ........................................................................................................... 6, 9

*Eastland v. U.S. Servicemen's Fund*,
 421 U.S. 491 (1975) ........................................................................................................ 5, 6, 9

\*  *Gravel v. United States*,
 408 U.S. 606 (1972) ................................................................................................ 5, 6, 8, 10

*Hastings v. United States Senate*,
 716 F. Supp. 38 (1989) .......................................................................................................... 7

*Lane v. Peña*,
 518 U.S. 187 (1996) ............................................................................................................... 4

*McLean v. United States*,
 566 F.3d 391 (4th Cir. 2009) ................................................................................................. 4

*McSurely v. McClellan*,
 553 F.2d 1277 (D.C. Cir. 1976) ............................................................................................. 9

*MINPECO, S.A. v. Conticommodity Servs., Inc.*,
 844 F.2d 856 (D.C. Cir. 1988) .......................................................................................... 9, 10

*Pentagen Techs. Int'l v. Committee on Appropriations of the U.S. House of
 Representatives*,
 20 F. Supp. 2d 41 (D.D.C. 1998) ........................................................................................ 7, 9

\*   *Porteous v. Baron*,
      729 F. Supp. 2d 158 (D.D.C. 2010) ...................................................................5, 6, 7, 8, 10

\*   *Rangel v. Boehner*,
      785 F.3d 19 (D.C. Cir. 2015) ..............................................................................5, 6, 10

*In re Request for Access to Grand Jury Materials Grand Jury No. 81-1, Miami*,
      833 F.2d 1438 (11th Cir. 1987) .........................................................................6, 7, 10

*Rockefeller v. Bingaman*,
      234 F. App'x 852 (10th Cir. 2007) ...................................................................................4

*SEC v. Comm. on Ways & Means*,
      161 F. Supp. 3d 199 (S.D.N.Y. 2015) ..............................................................................9

*Senate Permanent Subcomm. on Investigations v. Ferrer*,
      856 F.3d 1080 (D.C. Cir. 2017) .......................................................................................6

*Shuler v. United States*,
      531 F.3d 930 (D.C. Cir. 2008) ..........................................................................................4

*Smith v. U.S. Congress*,
      No. 95-5281, 1996 WL 523800 (D.C. Cir. Aug. 28, 1996) ..........................................12

*United States v. Biaggi*,
      853 F.2d 89 (2d Cir. 1988) ..............................................................................................9

*United States v. Brewster*,
      408 U.S. 501 (1972) ........................................................................................................5

*United States v. El-Sayegh*,
      131 F.3d 158 (D.C. Cir. 1997) .................................................................................11, 12

*Washington Legal Foundation v. U.S. Sentencing Comm'n*,
      17 F.3d 1446 (D.C. Cir. 1994) .................................................................................12, 13

*Washington Legal Foundation v. U.S. Sentencing Comm'n*,
      89 F.3d 897 (D.C. Cir. 1996) .........................................................................................13

**Constitutional Provisions**

Speech or Debate Clause, U.S. Const., Art. I, § 6, cl. 1. ......................................3, 5, 8, 10

**Statutes**

5 U.S.C. §§ 551 ........................................................................................................................12

5 U.S.C. §§ 552 ........................................................................................................................11

**Congressional Authorities**

H. Rep. No. 116-266 (2019) ...................................................................................................2

H. Res. 660, 116th Cong. (2019) ...............................................................................1, 2, 13

House Rule XI.2(m)(1)(B)......................................................................................................2

Press Release, Speaker Nancy Pelosi, *Pelosi Remarks Announcing Impeachment Inquiry* (Sep. 24, 2019)....................................................................................................2

Senate Trial Tr., Day 3, *In Re Impeachment of President Donald J. Trump* (Jan. 22, 2020)........................................................................................................14

*Trump Ukraine Impeachment Inquiry Report* (Dec. 2019) (HPSCI Report)............................3, 14

**INTRODUCTION**

Pursuant to the "common law right of public access to government records," Compl. ¶ 21 (Dec. 20, 2019) (ECF No. 1), Plaintiff Judicial Watch, Inc., seeks to obtain access to certain non-public record requests and subpoenas from Defendants, the Honorable Adam Schiff, U.S. Representative for the 28th congressional district of California and Chairman of the House Permanent Select Committee on Intelligence, and the Permanent Select Committee on Intelligence (HPSCI or the Committee) (collectively, House Defendants). The record requests and subpoenas sought for review were prepared and issued by the Committee in connection with the House of Representatives' impeachment inquiry into President Donald J. Trump.

These requests and subpoenas were integral to the Committee's inquiry and consistent with its mandate to investigate and issue a report setting forth its findings and making recommendations to the Committee on the Judiciary regarding whether "sufficient grounds exist for the House of Representatives to exercise its Constitutional power to impeach Donald John Trump, President of the United States of America." H. Res. 660, 116th Cong. (2019).

It is unclear for what precise purpose Plaintiff seeks the requested records. The only justification offered is that they "are of critical public importance as the subpoenas were issued without any lawful basis and violated the rights of numerous private citizens." Compl. ¶ 11. Plaintiff does not allege whose rights have been violated, nor do they suggest that Judicial Watch itself has suffered any sort of injury as a result of the issuance of the subpoenas.

**FACTUAL BACKGROUND**

On September 24, 2019, the Speaker of the House, Nancy Pelosi, announced that the House of Representatives would continue with its impeachment inquiry into President Donald J.

1

Trump.[2] Exercising the legislative and oversight authorities delegated to it by the House, HPSCI, in coordination with the House Committees on Foreign Affairs and Oversight and Reform, undertook an extensive investigation of President Trump's use of the power and instruments of the presidency and the federal government for his personal political gain. On October 31, 2019, the House adopted H. Res. 660, which (i) established the procedures for HPSCI to continue its ongoing investigation in open hearings, (ii) authorized public release of deposition transcripts, (iii) required HPSCI to prepare and issue a report and make recommendations to the Committee on the Judiciary, and (iv) provided additional procedures in furtherance of the impeachment inquiry, including for the Committee on the Judiciary. *See* H. Res. 660, 116th Cong. (2019); *see also* H. Rep. No. 116-266, at 2 (2019).

As part of its impeachment investigation, pursuant to House Rules, HPSCI issued subpoenas to telecommunications providers for certain records. *See* Rule XI.2(m)(1)(B), Rules of the U.S. House of Representatives, 116th Cong. (2019) (authorizing committees or subcommittees to "require by, subpoena or otherwise, the . . . production of such books, records, correspondence, memoranda, papers and documents as it considers necessary.").

The information obtained in response to the subpoenas furthered the Committee's investigation by establishing connections—specifically, telephone contacts—between relevant individuals at key points in time. For example, in the days immediately preceding the ousting of then-Ambassador to Ukraine Marie Yovanovitch, the records showed repeated telephone contacts between the White House and Rudy Giuliani, between Mr. Giuliani and Lev Parnas, and between Mr. Giuliani and Ambassador John Bolton, suggesting a coordinated effort to remove

---

[2] Press Release, Speaker Nancy Pelosi, *Pelosi Remarks Announcing Impeachment Inquiry* (Sep. 24, 2019), https://www.speaker.gov/newsroom/92419-0.

Ambassador Yovanovitch from her post. Information obtained from these requests and subpoenas is detailed in HPSCI's publicly available report. *See* HPSCI, *The Trump Ukraine Impeachment Inquiry Report* (Dec. 2019), 44 n. 49, 45 n. 69, 46 n. 76-78, 47 n. 82-85, 88, 54 n. 138, 144-145, 56 n. 158-59, 57 n. 171-73, 58 n. 177-83, 64 n. 255 (HPSCI Report).[3]

Despite the considerable amount of material released to the public, on December 6, 2019, Plaintiff submitted a request to Chairman Schiff and HPSCI for copies of "[a]ll subpoenas issued by the House Permanent Select Committee on Intelligence on or about September 30, 2019 to any telecommunications provider including, but not limited to AT&T, Inc., for records of telephone calls of any individuals;" and "[a]ll responses received to the above-referenced subpoenas." Compl. ¶ 8. Plaintiff filed this suit two weeks after submitting the request.

## ARGUMENT

The Court should dismiss the Complaint for four independent reasons, any one of which suffices on its own. *First*, the doctrine of sovereign immunity deprives the Court of jurisdiction over the House Defendants, and no express and unequivocal waiver exists. *Second*, given that the records sought by Plaintiff involve matters pursued and obtained by the House Defendants as part of the House-authorized impeachment inquiry, they are absolutely protected by the Speech or Debate Clause. *See* U.S. Const., Art. I, § 6, cl. 1. *Third*, Plaintiff fails to state a claim because Congress has created a comprehensive scheme for the review of government records—the Freedom of Information Act (FOIA)—that preempts the common law right sought to be vindicated by this litigation. *Finally*, under governing case law, the records Plaintiff seeks to review are not "public records" and, therefore, are not subject to the common law right of public

---

[3] Available at, https://intelligence.house.gov/uploadedfiles/the_trump-ukraine_impeachment_inquiry_report.pdf.

access. And even if the records are "public records," Plaintiff has not demonstrated that the public interest in disclosure outweighs the House Defendants' interest in non-disclosure. Accordingly, the Complaint should be dismissed with prejudice.

## I. THIS COURT LACKS JURISDICTION OVER THE HOUSE DEFENDANTS BECAUSE THEIR SOVEREIGN IMMUNITY HAS NOT BEEN WAIVED

Plaintiff's claim against the House Defendants is barred by sovereign immunity, under which "[t]he United States is protected from unconsented suit." *Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008) (quotation marks omitted). "[S]overeign immunity extends to the United States Congress when it is sued as a branch of government." *McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009) (citing *Keener v. Congress*, 467 F.2d 952, 953 (5th Cir. 1972)); *accord Cofield v. United States*, 64 F. Supp. 3d 206, 213-14 (D.D.C. 2014) (same); *see also Rockefeller v. Bingaman*, 234 F. App'x 852, 855 (10th Cir. 2007) ("[S]overeign immunity forecloses … claims against the House of Representatives and Senate as institutions, and Representative Pearce and Senator Bingaman as individuals acting in their official capacities." (quotation marks omitted)).

A plaintiff seeking to sue the federal government must identify a waiver of sovereign immunity that is "unequivocally expressed in statutory text." *Lane v. Peña*, 518 U.S. 187, 192 (1996) (waiver "will not be implied"). Yet Plaintiff has pointed to no such waiver, and there is none. *See, e.g.*, *Clark v. Library of Cong.*, 750 F.2d 89, 102-05 (D.C. Cir. 1984) (holding that monetary claims against the Librarian of Congress in his official capacity were barred by sovereign immunity). While sovereign immunity may not bar claims for "non-monetary, specific relief … where the challenged actions of the officials are alleged to be unconstitutional or beyond statutory authority," *id.* at 102, Plaintiff presents no such claim as to either of the

4

House Defendants. Accordingly, no basis exists for holding that sovereign immunity does not apply.

## II. THIS COURT LACKS JURISDICTION OVER THE HOUSE DEFENDANTS UNDER THE SPEECH OR DEBATE CLAUSE

Contrary to Plaintiff's assertion that "no . . . Speech [or] Debate immunity applies" to impeachment proceedings, *see* Compl. ¶ 10, its claim against the House Defendants for a common law right to public access to any requests or subpoenas to telecommunications providers is, in fact, absolutely barred by the Speech or Debate Clause of the Constitution. U.S. Const., Art. I, § 6, cl. 1

**1.** The Speech or Debate Clause of the Constitution provides that "for any Speech or Debate in either House, [Members of Congress] shall not be questioned in any other Place." *Id.* The Clause "insure[s] the historic independence of the Legislative Branch," which is "essential to our separation of powers," *United States v. Brewster*, 408 U.S. 501, 525 (1972), by "prevent[ing] intimidation of legislators by the Executive and accountability before a possibly hostile judiciary," *Gravel v. United States*, 408 U.S. 606, 617 (1972). As another Judge on this Court has observed, "[t]he Speech or Debate Clause protects the independence and autonomy of the Legislative Branch from judicial intrusion." *Porteous v. Baron*, 729 F. Supp. 2d 158, 166 (D.D.C. 2010).

The Framers recognized that "legislative independence is imperiled" when a "civil action . . . creates a distraction and forces Members to divert their time, energy, and attention from their legislative tasks to defend the litigation." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975); *see also Rangel v. Boehner*, 785 F.3d 19, 23 (D.C. Cir. 2015) ("The prospect of civil liability lessens the ability of the Members of the Congress to represent the interests of their constituents[.]" (quotation marks omitted)). Where it applies, the Speech or

Debate Clause confers "absolute immunity from civil suit." *Rangel*, 785 F.3d at 23.  It protects legislators "not only from the consequences of litigation's results but also from the burden of defending themselves."  *Porteous*, 729 F. Supp. 2d at 163 (quoting *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967)).

"Without exception," the Supreme Court has "read the Speech or Debate Clause broadly to effectuate [these] purposes."  *Eastland*, 421 U.S. at 501-02 (collecting cases).  Although "the Clause speaks of 'Speech or Debate,' it extends further to all 'legislative acts'" by Members of Congress and their staffs.  *Rangel*, 785 F.3d at 23 (quoting *Doe v. McMillan*, 412 U.S. 306, 312 (1973)); *see also Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1085-86 (D.C. Cir. 2017) (The Clause "functions to immunize Members of Congress from civil or criminal liability arising from 'actions [falling] within the legislative sphere[.]'" (quoting *McMillan*, 412 U.S. at 312)).  The Supreme Court, in turn, has broadly defined "legislative acts" to include those acts that are

> an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or *with respect to other matters which the Constitution places within the jurisdiction of either House*.

*Gravel*, 408 U.S. at 625 (emphasis added).

**2.**  Consistent with this broad construction, actions by the Committee and its Members as part of the impeachment proceedings fall within the definition of "legislative acts" immune from suit precisely because "impeachment is viewed as a legislative activity in the sense that it is one of the 'other matters which the Constitution places within the jurisdiction of either House.'"  *In re Request for Access to Grand Jury Materials Grand Jury No. 81-1, Miami*, 833 F.2d 1438, 1446 (11th Cir. 1987) (quoting *Gravel*, 408 U.S. at 625); *see also, e.g., Porteous*, 729 F. Supp. 2d at 166 (Speech or Debate immunity "prevent[ed]" suit challenging use of testimony in Senate

impeachment trial).[4]  The Speech or Debate Clause therefore "prevents [the Judiciary] from questioning Congress about actions taken in the impeachment process." *In re Request*, 833 F.2d at 1446.

Notwithstanding this clear precedent, Plaintiff claims that "[a]s the subpoenas were issued as part of the Committee's impeachment investigation, no legislative purpose affording Speech and Debate Clause immunity applies." Compl. ¶ 10.  However, the sole authority Plaintiff cites to support this baseless assertion fails to address impeachment activities in relation to the Speech or Debate Clause (or even impeachment at all).  *See Pentagen Techs. Int'l v. Committee on Appropriations of the U.S. House of Representatives*, 20 F. Supp. 2d 41 (D.D.C. 1998)).  In short, this case bears no relation to the (already settled) question of whether impeachment proceedings fall within the protective ambit of the Speech or Debate Clause.  Moreover, as discussed below, the case actually *supports* the conclusion that HPSCI's impeachment inquiry is protected by the Clause.  *Id.* at 44 (rejecting plaintiff's "assertion that 'investigative' materials fall outside the protection of the Speech or Debate Clause").

*Porteous v. Baron*, a decision of this district court, is instructive.  There, a suspended federal judge attempted to raise a Fifth Amendment challenge to the use, in his Senate impeachment trial, of sworn testimony that he had provided during the House's impeachment inquiry.  729 F. Supp. 2d at 160.  Judge Richard J. Leon reasoned that, because the "trial of impeachable offenses is, of course, a matter that the Constitution places within the *sole* jurisdiction of the Senate," the "consideration and use of such testimony by Members of

---

[4] *See also Hastings v. United States Senate*, 716 F. Supp. 38, 42 (1989) ("The Supreme Court has construed [the Speech or Debate Clause] broadly, and this Court must accordingly protect the legitimate activities of Senators acting within their constitutionally prescribed functions, including legislation and impeachment.").

Congress in the course of a Senate impeachment trial falls squarely within its legislative sphere." *Id.* at 165 (citing U.S. Const., Art. I, § 3, cl. 6). Accordingly, the court had "little difficulty" concluding that Speech or Debate immunity applied. *Id.*; *see also id.* at 166 ("[B]ecause the use of testimony to prepare for and conduct Congressional impeachment and removal proceedings is conduct of the type that clearly falls within the legislative sphere, the Speech or Debate Clause prevents this Court from questioning, let alone enjoining, the [Congressional] defendants about their use of [the plaintiff's] . . . testimony, whether or not such use actually runs afoul of the Fifth Amendment.").

For Speech or Debate purposes, there is no meaningful difference between the circumstances in *Porteous* and those here. Similar to *Porteous*, Plaintiff is seeking to review and question legislative acts by HPSCI as part of its impeachment inquiry, which the Constitution places within the House's "sole" jurisdiction. *See* 729 F. Supp. 2d at 165 (citing U.S. Const., Art. I, § 2, cl. 5). And, just as in *Porteous*, issuing subpoenas in an effort "to prepare for and conduct Congressional impeachment . . . clearly falls within the legislative sphere" covered by the Clause. *Id.* at 166.

**3.**  The concept of "legislative activity" has been broadly construed to include much more than merely words spoken in debate on the floor of the House and Senate. The "cases have plainly not taken a literalistic approach in applying the privilege . . . Committee reports, resolutions, and the act of voting are equally covered[.]" *Gravel*, 408 U.S. at 617. Even outside of the impeachment context, the Supreme Court and D.C. Circuit have emphasized that the collecting of information in furtherance of legislative responsibilities is an activity within the legislative sphere because "'[a] legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or

change.'" *Eastland*, 421 U.S. at 504 (quoting *McGrain v. Daugherty*, 273 U.S. 135, 175 (1927)); *see also Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 416 (D.C. Cir. 1995) ("[t]he privilege [] permits Congress to conduct investigations and obtain information without interference from the courts").

Protected information-gathering encompasses both formal Committee processes, *see, e.g.*, *Eastland*, 421 U.S. at 504, as well as less formal investigations by committee staff and individual Members, *see, e.g.*, *United States v. Biaggi*, 853 F.2d 89, 102-103 (2d Cir. 1988) (legislative fact-finding during congressional trip protected by Clause (citing *McSurely v. McClellan*, 553 F.2d 1277, 1286 (D.C. Cir. 1976))); *Brown & Williamson*, 62 F.3d at 411-12, 423 (D.C. Cir. 1995) (documents voluntarily delivered to committee by private citizen protected); *McSurely*, 553 F.2d at 1286 ("[I]nformation gathering, whether by issuance of subpoenas or field work by a Senator or his staff, is essential to informed deliberation over proposed legislation."); *MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 860 (D.C. Cir. 1988) ("Thus, the process by which a committee takes statements and prepares them for publication clearly qualifies as an activity within the legislative sphere."); *SEC v. Comm. on Ways & Means*, 161 F. Supp. 3d 199, 242 (S.D.N.Y. 2015) ("[L]egislative information gathering, whether formal or informal, is protected under the Speech or Debate Clause"); *Pentagen Tech.*, 20 F. Supp. 2d at 44 ("The protections of the Speech or Debate Clause extend to congressional use of records and documents.").

**4.** Plaintiff also dubiously alleges that the "subpoenas were issued without any lawful basis and violated the rights of numerous private citizens." Compl. ¶ 11. Even assuming that were accurate, which it is not, the protections of the Clause are not abrogated by allegations that a Member or Committee acted illegally or with malintent. *See, e.g.*, *McMillan*, 412 U.S. at 312-

9

13 (Clause applies to all legislative activities "even though the[] conduct, if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes"); *Rangel*, 785 F.3d at 24 ("An act does not lose its legislative character simply because a plaintiff alleges that it violated House Rules . . . or even the Constitution . . . .").

Rather, the proper inquiry for courts is to assess the "nature of the act" to determine "whether, stripped of all considerations of intent and motive, [the challenged] actions [a]re legislative." *Bogan v. Scott-Harris*, 523 U.S. 44, 54, 55 (1998) ("Whether an act is legislative turns on the nature of the act itself[.]"); *see also Porteous*, 729 F. Supp. 2d at 166 ("The focus is on the nature of the defendants' conduct more generally.  So long as the type of conduct he seeks to enjoin falls legitimately within the scope of legislative activity, it matters not whether the specific conduct is unlawful."). Once the legislative-act test is met, that is "the end of the matter [for] . . . the courts." *MINPECO*, 844 F.2d at 861.  Such is the nature of Speech or Debate, "absolute immunity, which is—in a word—absolute." *Rangel*, 785 F.3d at 24.

**5.**  Binding precedent compels dismissal on the grounds that the House Defendants are absolutely immune from suit.  Plaintiff seeks records specifically related to legislative acts absolutely protected by the Constitution; namely, HPSCI's gathering of information related to the impeachment inquiry into the actions of President Trump.  Because impeachment is a "matter[] which the Constitution places within the jurisdiction of [the] House," *Gravel*, 408 U.S. at 625, the Speech or Debate Clause prohibits litigation against the House Defendants for any actions taken within the scope of that inquiry.  *See Rangel*, 785 F.3d at 23 (Clause prohibited suit where court was asked to "review a congressional disciplinary proceeding—a legislative matter that the Constitution places within the jurisdiction of the House" (quotation marks and alterations omitted) (citing U.S. Const., Art. I, § 5, cl. 2)); *see also In re Request*, 833 F.2d at 1446.

10

Accordingly, the records sought by Plaintiff are absolutely protected and their production cannot be compelled.  This Court must dismiss for lack of jurisdiction pursuant to the Speech or Debate Clause.

## III. PLAINTIFF FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED

Even if the Court were to reject the constitutional defenses articulated above, Plaintiff nonetheless fails to state a claim because (i) FOIA displaces any common law right of access to the requested records, (ii) the specific records being sought do not qualify as "public records," and, even if the records are "public records," (iii) the Committee's interest in non-disclosure outweighs the purported public interest in disclosure.

### A. FOIA Preempts the Plaintiff's Common Law Right of Access Claim

A federal common law doctrine is displaced when Congress enacts a comprehensive legislative scheme that "[speaks] directly [to] a question."  *City of Milwaukee v. Illinois and Michigan*, 451 U.S. 304, 314 (1981) ("when Congress addresses a question previously governed by a decision rested on federal common law the need for such an unusual exercise of lawmaking by federal court disappears").  The D.C. Circuit has held that Congress broadly spoke to the common law right of access when enacting FOIA.  *See, e.g.*, *Ctr. for Nat. Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 936-37 (D.C. Cir. 2003), *cert. denied*, 540 U.S. 1104 (2004) ("Congress has provided a carefully calibrated statutory scheme, balancing the benefits and harms of disclosure. That scheme preempts any preexisting common law right."); *United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997) ("The appropriate device is a Freedom of Information Act request addressed to the relevant agency.").  Congress also spoke *directly* to the question in this litigation—information requests to Congress—by excluding itself from FOIA. *See* 5 U.S.C. §§ 552(a) (statute applies only to "agencies" of the United States), 552(f)(1),

11

551(1)(A) (excluding Congress from the definition of "agency"); Order, *Smith v. U.S. Congress*, No. 95-5281, 1996 WL 523800 (D.C. Cir. Aug. 28, 1996) ("[FOIA] . . . does not apply to congressional documents.") (citing *Goland v. CIA*, 607 F.2d 339 (D.C. Cir. 1978), *cert. denied*, 445 U.S. 927 (1980)).

According to the D.C. Circuit, the statutory exclusion in FOIA means that "it would make no sense for Congress to … carefully apply that statutory scheme, and then to turn and determine that the statute had no effect on a preexisting common law right of access." *Ctr. for Nat. Sec. Studies*, 331 F.3d at 937 (rejecting a common law claim for information otherwise exempted from disclosure under FOIA). That rationale applies here: "it would make no sense" for Congress to deliberately exclude congressional materials from the requirements of FOIA all the while expecting courts to subject the *same* materials to disclosure at common law.

Accordingly, Plaintiff fails to state an actionable common law claim, and does not—and cannot—state a claim under FOIA.

### B. Plaintiff Is Not Entitled to Review the Subpoenas Because They Are Not "Public Records"

Finally, even if the Court were to hold that FOIA does not preempt a common law right of access, Plaintiff is still not entitled to review the Committee's subpoenas and any responses thereto.

To the extent that any common law right "in keeping a watchful eye on the workings of public agencies," *U.S. v. El-Sayegh*, 131 F.3d 158, 161 (D.C. Cir. 1997) (judicial records) (quotation marks omitted); s*ee also Washington Legal Foundation v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1451-52 (D.C. Cir. 1994) (executive agency records), continues to exist, it is not absolute. First, the right applies only to "public records." *Id.* Second, if the document sought is a "public record," then the court must "balance the government's interest in keeping the

document secret against the public's interest in disclosure." *Id.* Plaintiff cannot surmount either of these hurdles. As a result, Plaintiff fails to state a claim for which relief can be granted under Federal Rule 12(b)(6).

**1.** "[A]s a matter of federal common law," this Circuit has defined "public record" as a "government document created and kept for the purpose of memorializing or recording an official action, decision, statement, or other matter of legal significance, broadly conceived." *Washington Legal Foundation v. U.S. Sentencing Comm'n*, 89 F.3d 897, 905 (D.C. Cir. 1996). A "public record," however, does "not encompass the preliminary materials upon which an official relied in making a decision or other writings incidental to the decision itself." *Id.* In *Washington Legal Foundation*, for example, the plaintiff sought access to "internal documents and memoranda" of the Advisory Working Group of the Sentencing Commission, which had been established to "develop and recommend" sentencing guidelines to the Commission. *Id.* at 899. The Court found that the documents sought were not public records because they were either "preliminary" or "merely incidental" to the "final report, which contained [the Advisory Group's] recommendations, [and was] available to the public." *Id.* at 906.

And so it is here. Plaintiff's claim fails because the subpoenas and any responses thereto are not "public records." As part of its impeachment inquiry, the Committee's investigative staff undertook an extensive fact-finding investigation of President Trump's use of the power and instruments of the presidency and the federal government for his personal political gain. The investigative staff sought and obtained "preliminary materials," including telephone and other electronic records, to assist "official" Committee Members, including Chairman Schiff, in "making a decision" on whether the President engaged in impeachable conduct and how to report that decision to the Committee on the Judiciary in accordance with H. Res. 660. These

preliminary materials were also "merely incidental" to the "final report, which contained [the Committee's] recommendations, [and was made] available to the public." *Id.*; *see also* HPSCI Report. As such, the subpoenas and responses thereto are clearly "preliminary or merely incidental to" the final, public decisions made by the Committee.

**2.** Even if the records sought were deemed to be "public records," Plaintiff would still be unable to demonstrate that the public interest in disclosure outweighs the Committee's interest in non-disclosure. As discussed above, portions of the materials Plaintiff seek, such as responses to the Committee's requests and subpoenas, is extensively detailed in a publicly available report. *See* HPSCI Report.[5] The Committee also has a strong interest in maintaining the confidentiality of its investigative techniques and methods, including the content of any subpoenas determined not to be relevant to the allegations discussed in the Committee's ultimate public report. And most notably, Plaintiff fails to articulate *any* public benefit beyond a conclusory, unsupported allegation of wrongdoing. Because the Committee has a strong interest in non-disclosure of the material not already publicly available, and Plaintiff cannot plausibly demonstrate a public need, the "public interest" argument must fail as a matter of law.

Accordingly, Plaintiff has failed to state a claim upon which relief may be granted.

## CONCLUSION

For all the above stated reasons, House Defendants' Motion to Dismiss should be granted.

---

[5] In addition to the publicly available HPSCI Report, a number of the phone records in question were discussed during the Senate's impeachment trial. *See* Senate Trial Tr., Day 3 at 0:15:14-41, *In Re Impeachment of President Donald J. Trump* (Jan. 22, 2020) (opening argument by impeachment manager Rep. Jerrold Nadler), available at https://www.c-span.org/video/?468322-101/senate-impeachment-trial-day-3-opening-arguments-house-democratic-managers.

        Respectfully submitted,

        */s/ Douglas N. Letter*
        DOUGLAS N. LETTER (D.C. Bar No. 2533492)
         *General Counsel*
        TODD B. TATELMAN (VA Bar No. 66008)
         *Deputy General Counsel*

        OFFICE OF GENERAL COUNSEL
        U.S. HOUSE OF REPRESENTATIVES
        219 Cannon House Office Building
        Washington, D.C. 20515
        Telephone: (202) 225-9700
        douglas.letter@mail.house.gov


        *Counsel for Chairman Adam Schiff and the House*
         *Permanent Select Committee on Intelligence*

March 13, 2020