UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> ADAM B. SCHIFF, *Chairman, U.S. House Permanent Select Committee on Intelligence*, *et al.*, <br><br> Defendants. | Civil Action No. 19-cv-3790 (BAH) <br><br> Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION

Plaintiff Judicial Watch, Inc. asserts that the common-law right of access requires defendants, the House Permanent Select Committee on Intelligence ("HPSCI" or "Committee") and Adam B. Schiff, in his capacity as HPSCI's Chairman, to disclose subpoenas issued in September 2019, and associated responses received, by HPSCI to telecommunications providers as part of the Committee's impeachment inquiry into activities of President Donald J. Trump. *See generally* Compl., ECF No. 1. According to plaintiff, defendants' failure to produce, upon request, the requested subpoenas and responses violates the common-law right of public access, *id.* ¶ 14, which gives "members of the public . . . the right to examine government records when the public interest in disclosure is greater than that in government secrecy," *id.* ¶ 7. Defendants move to dismiss the complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defs.' Mot. Dismiss ("Defs.' Mot."), ECF No. 9, arguing both that sovereign immunity bars the exercise of jurisdiction here and that no valid claim is presented, Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Mem.") at 3–4, ECF No. 9-1. For the reasons explained below,

1

defendants' motion is granted for lack of jurisdiction, requiring dismissal of the complaint with prejudice.

## I. BACKGROUND

On September 24, 2019, Speaker Nancy Pelosi "announced that the House of Representatives would continue with its impeachment inquiry into President Donald J. Trump." Defs.' Mem. at 1–2 (citing Press Release, Speaker Nancy Pelosi, Pelosi Remarks Announcing Impeachment Inquiry (Sept. 24, 2019), *available at* https://www.speaker.gov/newsroom/92419-0). Roughly one month later, on October 31, 2019, the House adopted House Resolution 660, "which (i) established the procedures for HPSCI to continue its ongoing investigation in open hearings, (ii) authorized public release of deposition transcripts, (iii) required HPSCI to prepare and issue a report and make recommendations to the Committee on the Judiciary, and (iv) provided additional procedures in furtherance of the impeachment inquiry, including for the Committee on the Judiciary." *Id.* at 2 (citing H.R. 660, 116th Cong. (2019); H.R. REP. NO. 116-266, at 2 (2019)). "As part of its impeachment investigation, . . . HPSCI issued subpoenas to telecommunications providers for certain records," and obtained in response information that "furthered [HPSCI's] investigation by establishing connections—specifically, telephone contacts—between relevant individuals at key points in time." *Id.* Some of this information was subsequently made public by HPSCI in a published report. *See* HOUSE PERMANENT SELECT COMMITTEE ON INTELLIGENCE, 116TH CONG., THE TRUMP-UKRAINE IMPEACHMENT INQUIRY REPORT (Dec. 2019), *available at* https://intelligence.house.gov/uploadedfiles/the_trump-ukraine_impeachment_inquiry_report.pdf.

According to plaintiff, the subscribers of the telephone records subject to the subpoenas at issue include "ranking Intelligence Committee Republican Devin Nunes, President Donald J.

Trump attorneys Rudy Giuliani and Jay Sekulow, journalist John Solomon, the White House, and others." Pl.'s Opp'n Defs.' Mot. Dismiss ("Pl.'s Opp'n") at 1, ECF No. 11. This use of subpoena power is, in plaintiff's view, "an unprecedented use of government surveillance power for allegedly partisan purposes," *id.* at 1, that "raise[s] important questions regarding possible violation[s] of the attorney-client privilege of the President, the First Amendment rights of a journalist, and a purportedly unbounded power by Congress to monitor the telephone calls of any citizen," *id*. at 1–2.

"[T]o shed light on these questions," *id*. at 2, on December 6, 2019, plaintiff requested from defendants copies of "[a]ll subpoenas issued by the House Permanent Select Committee on Intelligence on or about September 30, 2019 to any telecommunications provider including, but not limited to AT&T, Inc., for records of telephone calls of any individuals," and "[a]ll responses received to the above-referenced subpoenas," Compl. ¶ 8; Pl.'s Opp'n at 2. Defendants did not respond to this request, Compl. ¶ 9, prompting plaintiff's initiation, on December 20, 2019, of this lawsuit to require disclosure by "issu[ing] a writ of mandamus compelling Defendants to carry out their non-discretionary duty to make all of the requested records available," *id*. at 4.

Defendants' pending motion to dismiss is now ripe for review.

## II. LEGAL STANDARD

"Article III of the Constitution prescribes that '[f]ederal courts are courts of limited subject-matter jurisdiction' and 'ha[ve] the power to decide only those cases over which Congress grants jurisdiction.'" *Bronner v. Duggan*, 962 F.3d 596, 602 (D.C. Cir. 2020) (alterations in original) (quoting *Al-Zahrani v. Rodriguez*, 669 F.3d 315, 317 (D.C. Cir. 2012)); *see Gunn v. Minton,* 568 U.S. 251, 256 (2013) ("'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" (quoting

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994))). Federal courts therefore have a corresponding "independent obligation to ensure that they do not exceed the scope of their jurisdiction" and "must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). Absent subject-matter jurisdiction over a case, the court must dismiss it. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506–07 (2006) (citing *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)); FED. R. CIV. P. 12(h)(3).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of demonstrating the court's subject-matter jurisdiction over the claim at issue. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). When considering a motion to dismiss under Rule 12(b)(1), the court must accept as true all uncontroverted material factual allegations contained in the complaint and "'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged' and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citations omitted) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). The court need not accept inferences drawn by the plaintiff, however, if those inferences are unsupported by facts alleged in the complaint or amount merely to legal conclusions. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

### III.   DISCUSSION

Defendants argue that the Court lacks jurisdiction over this case for two reasons: first, "the doctrine of sovereign immunity deprives the Court of jurisdiction over the House Defendants," Defs.' Mem. at 3, and second, "given that the records sought by Plaintiff involve matters pursued and obtained by the House Defendants as part of the House-authorized

4

impeachment inquiry, they are absolutely protected by the Speech or Debate Clause," *id*. (citing U.S. CONST., art. I, § 6, cl. 1).  Plaintiff counters that neither form of immunity applies.  *See* Pl.'s Opp'n at 3–5.  Each ground for immunity is examined in turn.[1]

    **A.**    **Sovereign Immunity**

The Supreme Court has stated that "[t]he general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act."  *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (internal quotations and citations omitted).  For such suits, "[t]he basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress."  *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983); *see also FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.") (citations omitted); *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."); *Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008) (quoting *Gray v. Bell*, 712 F.2d 490, 506 (D.C. Cir. 1983)) ("'The United States is protected from unconsented suit under the ancient common law doctrine of sovereign immunity.'").  Any "waiver of the Federal Government's sovereign immunity must be

---

[1] Defendants also argue that plaintiff fails to state a claim, warranting dismissal under Federal Rule of Civil Procedure 12(b)(6), because "Congress has created a comprehensive scheme for the review of government records—the Freedom of Information Act (FOIA)—that preempts the common law right sought to be vindicated by this litigation," Defs.' Mem. at 3, and "the records Plaintiff seeks to review are not 'public records' and, therefore, are not subject to the common law right of public access," *id*. at 3–4.  Except to the extent these arguments are intertwined with the jurisdictional analysis, *see infra* Part III.A.2(b), they need not be addressed since the complaint is dismissed for lack of subject matter jurisdiction.  *See Al-Tamimi v. Adelson*, 916 F.3d 1, 7 (D.C. Cir. 2019) (finding that district court properly considered jurisdictional issue "before considering whether dismissal for failure to state a claim was appropriate under Fed. R. Civ. P. 12(b)(6)"); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)) ("'Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'").

unequivocally expressed in statutory text and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted).

Sovereign immunity extends to Congress when "sued as a branch of the government," *McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009), *abrogated on other grounds by Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721 (2020), and makes members of Congress "immune from liability for their actions within the legislative sphere," *id*.  Thus, the doctrine of sovereign immunity generally "forecloses . . . claims against the House of Representatives and Senate as institutions," and against members of both congressional houses "acting in their official capacities," since "an 'official capacity' suit is treated as a suit against a government entity." *Rockefeller v. Bingaman*, 234 F. App'x 852, 855 (10th Cir. 2007) (quoting *Rockefeller v. Bingaman*, No. CIV-06-0198, 2006 WL 4061183, at *3 (D.N.M. Sept. 20, 2006)) (citing *Keener v. Cong. of the U.S.*, 467 F.2d 952, 953 (5th Cir. 1972)); *see also Cofield v. United States*, 64 F. Supp. 3d 206, 213–14 (D.D.C. 2014) ("[S]overeign immunity bars any claim for money damages against the United States (including the U.S. Senate) and its agencies.").

Here, plaintiff acknowledges that this suit against a House Committee and a House member is for records "generated pursuant to the Committee's impeachment investigation." Compl. ¶ 17; *id*. ¶ 10.  Notwithstanding the "official capacity" in which the requested records were "generated," plaintiff disputes that sovereign immunity bars this suit because, instead of seeking monetary damages, "Plaintiff's complaint specifically seeks mandamus relief under 28 U.S.C. § 1361."  Pl.'s Opp'n at 3.  As such, plaintiff contends—in four brief sentences in its seven-page opposition to dismissal—that the so-called *Larson-Dugan* exception to sovereign immunity applies to permit this suit to go forward.  *Id*. (first citing *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949); then citing *Dugan*, 372 U.S. at 621–22; and then

citing *Wash. Legal Found. v. U.S. Sent'g Comm'n* ("*WLF II*"), 89 F.3d 897, 901–02 (D.C. Cir. 1996)). As the analysis that follows shows, even upon application of the *Larson-Dugan* exception to sovereign immunity, the disclosure of the requested records is not legally required.

      *1. Application of the* Larson-Dugan *Exception*

In *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949), the plaintiff sued the head of the War Assets Administration, not for money damages, but for specific performance of the delivery of surplus coal in accordance with plaintiff's contract with the government, *id.* at 684–85. Finding that the Administrator's action in refusing the coal shipment to plaintiff was not unconstitutional or *ultra vires* conduct outside the scope of the Administrator's authority, nor contrary to statute or order, *id.* at 703, the Supreme Court concluded the Administrator's action "was, therefore, inescapably the action of the United States and the effort to enjoin it must fail as an effort to enjoin the United States," *id.*; *see also id.* at 688 (noting suit would be barred "not because it is a suit against an officer of the Government, but because it is, in substance, a suit against the Government over which the court, in the absence of consent, has no jurisdiction"). The Court thereby clarified, and made explicit in *Dugan v. Rank*, 372 U.S. 609 (1963), an exception to sovereign immunity in actions seeking specific relief for "(1) action by [government] officers beyond their statutory powers [or] (2) even though within the scope of their authority, the powers themselves or the manner in which they are exercised are constitutionally void," *id.* at 621–22. "In either of such cases the officer's action 'can be made the basis of a suit for specific relief against the officer as an individual . . . .'" *Id.* at 622 (quoting *Malone v. Bowdoin*, 369 U.S. 643, 647 (1962)); *see also Dalton v. Specter*, 511 U.S. 462, 472 (1994)) (quoting *Larson*, 337 U.S. at 691 n.11) (summarizing *Larson* as holding "that sovereign immunity would not shield an executive officer from suit if the officer acted

either 'unconstitutionally *or* beyond his statutory powers'" (emphasis in original)); *Pollack v. Hogan*, 703 F.3d 117, 119–21 (D.C. Cir. 2012); *id.* at 120 (quoting *Larson,* 337 U.S. at 689) ("Under [the *Larson-Dugan*] exception, 'suits for specific relief against officers of the sovereign' allegedly acting 'beyond statutory authority or unconstitutionally' are not barred by sovereign immunity.").

Defendants contend that sovereign immunity bars this suit and that the *Larson-Dugan* exception is inapplicable for three reasons. First, defendants assert that the mandamus statute, 28 U.S.C. § 1361, "does not by itself waive sovereign immunity." Defs.' Reply Supp. Defs.' Mot. Dismiss ("Defs.' Reply") at 2, ECF No. 12 (quoting *WLF II*, 89 F.3d at 901) (citing *Pub. Citizen v. Kantor,* 864 F. Supp. 208, 213 (D.D.C.1994), *abrogated on other grounds by Chamber of Com. v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996) ("The generally accepted rule is that § 1361 does not constitute a waiver of sovereign immunity by the United States.")). True enough, but that assertion merely begs the question. If the *Larson-Dugan* exception does apply, the law in this Circuit is well-settled that "[n]o separate waiver of sovereign immunity is required to seek a writ of mandamus to compel an official to perform a duty required in his official capacity." *Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005); *see also WLF II*, 89 F.3d at 901 (citing *Reich*, 74 F.3d at 1329) ("If a plaintiff seeks a writ of mandamus to force a public official to perform a duty imposed upon him in his official capacity, however, no separate waiver of sovereign immunity is needed."); *Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996) (holding that "sovereign immunity does not act as a bar to our exercising jurisdiction" since *Larson-Dugan* exception applies "and hence no waiver of sovereign immunity is required here.").

Second, defendants argue, Defs.' Reply at 2, that plaintiff fails to meet the "necessary prerequisites for this court to exercise its mandamus jurisdiction," *Swan*, 100 F.3d at 976 n.1,

which requires that: "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff," *id*. (quoting *Am. Cetacean Soc'y v. Baldrige,* 768 F.2d 426, 433 (D.C. Cir. 1985), *rev'd on other grounds sub nom. Japan Whaling Ass'n v. Am. Cetacean Soc'y,* 478 U.S. 221 (1986)). Defendants primarily target the second mandamus prong, stating that "Plaintiff cannot demonstrate that either Congressman Schiff or the Committee 'has a clear, nondiscretionary duty to act.'" Defs.' Reply at 2 (quoting *Sluss v. U.S. Citizenship & Immigr. Servs.*, 899 F. Supp. 2d 37, 41 (D.D.C. 2012)) (citing, as support, RULES OF THE U.S. HOUSE OF REPRESENTATIVES, 116th Cong., Rule X.11(g)(1) (2019), which mandates a vote of the full Committee for public disclosures of "any information in its possession").[2] Again, this argument misses the mark. Should the common-law right of access apply to the requested records, then HPSCI's exercise of discretion (upon majority vote of Committee members) whether to release those records to plaintiff would be cabined accordingly by the legal duty or obligation to fulfill plaintiff's request. *Cf. Larson.*, 337 U.S. at 691 (concluding sovereign immunity barred suit and exception was inapplicable, absent, in part, "any allegation of a limitation on the [government official]'s delegated power to refuse shipment in cases in which he believed the United States was not obliged to deliver").

Finally, defendants insist that the *Larson-Dugan* exception is inapplicable because plaintiff presents no claim that the challenged action of "either of the House defendants" was

---

[2] Defendants do not contest plaintiff's lack of another adequate remedy, but do contend that "it is far from clear that Plaintiff satisfies the [first mandamus] requirement that it 'ha[ve] a clear and indisputable right to relief,'" Defs.' Reply at 2 n.1 (quoting *Sluss v. U.S. Citizenship & Immigr. Servs.*, 899 F. Supp. 2d 37, 41 (D.D.C. 2012)), because "[t]here exist serious separation-of-powers questions regarding whether a writ of mandamus can be issued against either a Congressional committee or a sitting Member of Congress acting pursuant to his constitutional prerogatives," *id*. This question need not be resolved because, as set forth *infra* Part III.A.2, the common-law right of public access does not impose a clear duty on defendants. *See Heckler v. Ringer*, 466 U.S. 602, 616 (1984) (first citing *Kerr v. U.S. Dist. Court*, 426 U.S. 394, 402–03 (1976); and then citing *United States ex rel. Girard Tr. Co. v. Helvering*, 301 U.S. 540, 543–44 (1937)) (finding that 28 U.S.C. § 1361 "provides a remedy for a plaintiff . . . only if the defendant owes him a clear nondiscretionary duty").

unconstitutional, *ultra vires*, or beyond statutory authority. Defs.' Mem. at 4–5; Defs.' Reply at 3. Indeed, absolutely no allegation is made—and no evidence suggests—that HPSCI or its chairman acted *ultra vires* or in a manner contrary to the U.S. Constitution or a statute in issuing the subpoenas at issue, or receiving the responses thereto, in connection with the impeachment inquiry. To the contrary, as defendants point out, "the Committee's investigation—led by Congressman Schiff in his capacity as Chairman of the Committee—and the subpoenas it issued were clearly and expressly authorized by the full House and entirely consistent with its standing rules." Defs.' Reply at 4.

At the same time, defendants' argument that the *Larson-Dugan* exception is inapplicable because "the powers of House Defendants are simply not 'limited by statute'" and, thus, "no statutory 'limitations' on the issuance of subpoenas by a House committee during an investigation" exist, Defs.' Reply at 3, is forestalled by binding D.C. Circuit precedent. In *WLF II*, plaintiffs sought, pursuant to the common-law right of public access to government records, disclosure of documents "compiled or created by an advisory committee established by the United States Sentencing Commission," 89 F. 3d at 898–99. In the D.C. Circuit's analysis, the relevant "duty" owed by the defendants in the case stemmed from the common-law right itself, not a separate statute or regulation. *Id.* at 901. Whether the *Larson-Dugan* exception to sovereign immunity applies "depends upon whether the Government has a duty to the plaintiff, *viz.* to allow it access to certain government records." *Id.* As a result, applicability of the exception turns first on the existence of the duty, and the application of sovereign immunity merges with the claimed duty to disclose asserted in the petition for mandamus. The D.C. Circuit explained: "the question of jurisdiction merges with the merits," triggering an assessment of the validity of plaintiff's claim under the common-law right of access. *Id.* at 902.

Likewise, here, while defendants are correct that no independent statutory duty requires disclosure of the requested subpoenas, *see* Defs.' Reply at 3–4, the relevant duty, as in *WLF II,* is that potentially created by the common-law right itself. Applicability of the *Larson-Dugan* exception thus turns on—or "merges with," *WLF II*, 89 F.3d at 902—the question of whether defendants have a duty to provide plaintiff with access to the requested records. *See also Swan*, 100 F.3d at 981 (determining whether "the *Larson-Dugan* exception would be triggered and hence no waiver of sovereign immunity is required" rested on "discussion of the central merits question in the case, namely whether" challenged government action violated statute); *Mashiri v. Dep't of Educ.*, 724 F.3d 1028, 1031–32 (9th Cir. 2013); *id.* at 1032 (quoting *WLF II*, 89 F.3d at 901–02) (following D.C. Circuit's practice when finding that "the question of '[w]hether the *Larson-Dugan* exception' applied 'merge[d] with the question on the merits,'" and therefore turning "to address the substantive merits of the mandamus claim before it'" (alterations in original)); *accord Int'l Fed'n. of Prof'l & Tech. Eng'rs v. United States*, 934 F. Supp. 2d 816, 821–22 (D. Md. 2013) (applying *Larson-Dugan* exception to avoid sovereign immunity bar and reach merits of suit by union and employees of legislative branch entities against Secretary of the United States Senate and Sergeant at Arms of the Senate in their official capacities, claiming parts of the Stop Trading on Congressional Knowledge Act were unconstitutional); *Ctr. for Arms Control & Non-Proliferation v. Lago*, No. 05-682 (RMC), 2006 WL 3328257, at *4–6 (D.D.C. Nov. 15, 2006) (finding, in suit for disclosure of materials used by defunct presidential commission in developing a report to the President, that sovereign immunity defense was "auxiliary to the ultimate question on the merits" as to whether the commission owed duty of disclosure under sunshine provisions of Federal Advisory Committee Act and therefore addressing the merits).

11

In short, the merits of plaintiff's claimed right of access to the requested subpoenas must be considered to assess whether the sovereign immunity defendants claim bars this lawsuit.

*2. Plaintiff Has No Common-Law Right of Access to the Requested Records*

The Supreme Court has made "clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns*, 435 U.S. 589, 597 (1978) (footnote omitted). This right of access is "not absolute," *id*. at 598, but "left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case," *id*. at 599; *see SEC v. Am. Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013) ("Of course, even if a document is a record of the type subject to the common law right of access, the right is not absolute: it is defeated when the government's interest in secrecy outweighs the public's interest in disclosure."). Binding precedent in this Circuit ensures that "the common law right of access extends beyond judicial records to the 'public records' of all three branches of government." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 936 (D.C. Cir. 2003) (citing *WLF II*, 89 F.3d at 903–04); *see also Schwartz v. U.S. Dep't of Justice*, 435 F. Supp. 1203, 1204 (D.D.C. 1977) (holding "that Congress is subject to the common law rule which guarantees the public a right to inspect and copy public records" and explaining that even though "Congress has exempted itself from the requirements of the Freedom of Information Act, 5 U.S.C. § 552, by 5 U.S.C. § 551(1)(A)[,] [t]hat Act, however, is not coextensive with the common law rule").

*(a) Two-Part Test for Application of Common-Law Right of Public Access*

The D.C. Circuit has outlined a two-step process for determining whether the common-law right of access applies. *Wash. Legal Found. v. U.S. Sent'g Comm'n* ("*WLF I*"), 17 F.3d 1446, 1451–52 (D.C. Cir. 1994). First, a court must decide "whether the document sought is a

12

'public record,'" *id*. at 1451, and, if it is, then, second, "the court should proceed to balance the government's interest in keeping the document secret against the public's interest in disclosure," *id*. at 1451–52; *see also WLF II*, 89 F.3d at 899 (summarizing prior holding). As to the first prong, under "federal common law," a "public record" subject to the public right of access "is a government document created and kept for the purpose of memorializing or recording an official action, decision, statement, or other matter of legal significance, broadly conceived." *WLF II*, 89 F.3d at 905; *see also Am. Int'l Grp.*, 712 F.3d at 3 (same). In applying the second prong of this test, courts "should focus on the specific nature of the governmental and public interests as they relate to the document itself," rather than engaging in "an abstract inquiry." *WLF I*, 17 F.3d at 1452.[3]

The requested records at issue in this lawsuit do not satisfy this two-part public access test.

           (b)       *The Requested Records Are Not Public Records*

The requested subpoenas were issued by HPSCI and in this respect certainly reflect an official action of the Committee.[4] Not every ministerial or preliminary step to gather

---

[3] In *WLF I*, the D.C. Circuit found that the "district court erred" by concluding categorically that the common-law right did not apply "without knowing" precisely which documents were at issue, and thus instructed that "the court should have analyzed each category of document requested." *WLF I*, 17 F.3d at 1452. Here, by contrast, the requested documents are identified plainly as the subpoenas to, and corresponding responses from, telecommunications carriers for subscriber records for various individuals relevant to the HPSCI impeachment inquiry. Compl. ¶ 8; Pl.'s Opp'n at 2.

[4] The responses to the subpoenas were supplied by the subpoena recipients and thus were not "created" by HPSCI. Consequently, the requested subpoena responses fail to meet the definition of "public record" subject to the common law right of access. *See, e.g.*, *Am. Int'l Grp.*, 712 F.3d at 5 (holding that "[d]ocuments created by the independent consultant are not government documents," even though provided to a government agency and the court and therefore not "public records" of the type subject to the common law right of access). In addition to not meeting the first prong of the two-part public access test, the requested subpoena responses fail the second prong. The requested subpoena responses implicate the subscribers' privacy interests, as plaintiff acknowledges. *See* Compl. ¶ 11; Pl.'s Opp'n at 2 n.2 (noting that "Plaintiff does not seek to and will not further expose the call records of private individuals"). To the extent such responses were not already revealed by HPSCI, *see* Pl.'s Opp'n at 6; (noting that some of the requested information was "released publicly by Defendants"), further disclosure of these subscriber records would not serve the public interest but only unnecessarily undermine those privacy interests.

information by a government entity amounts to creation of a "public record," however. In fashioning the definition of "public records" subject to the common law right of public access, the D.C. Circuit articulated two guideposts: "adequately protect[ing] the public's interest in keeping a watchful eye on the workings of public agencies,—an interest we regard as fundamental to a democratic state," *WLF II*, 89 F.3d at 905 (internal quotations and citations omitted), and "yet narrow enough to avoid the necessity for judicial application of the second-step balancing test to documents that are preliminary, advisory, or, for one reason or another, do not eventuate in any official action or decision being taken," *id*. As examples of the latter "not encompass[ed]" by the definition, the Court cited "the preliminary materials upon which an official relied in making a decision or other writings incidental to the decision itself—for example, the report of a blood test provided in support of an application for a marriage license, the job application of a would-be government employee, a government auditor's preliminary notes used in the preparation of an official report, or a cover memorandum circulated with a copy of an official report or study." *Id.* at 905–06.

HPSCI's issuance of the requested subpoenas was just such a preliminary step to gather information pertinent to the Committee's task of deciding whether to recommend impeachment of the President and thus the subpoenas do not qualify as public records subject to the common-law right of public access. For example, in the analogous case of *Pentagen Technologies International v. Committee on Appropriations of the United States House of Representatives* ("*Pentagen Technologies*"), 20 F. Supp. 2d 41 (D.D.C. 1998), *aff'd*, 194 F.3d 174 (D.C. Cir. 1999), a private company and individual sued, under the public right of access to public records, for disclosure of investigative reports prepared by staff of the defendant Committee on Appropriations of the United States House of Representatives, *id.* at 43. The Court declined to

14

compel disclosure, finding that the investigative reports at issue were "'preliminary materials' that do not fall within the definition of 'public records' employed by this Circuit," because "the reports are 'investigative' in nature" and do not "memorialize or record any official action taken by the Committee." *Id*. at 45. This finding led to the conclusion that "[t]here thus exists no common law right of access to the reports, and the Court need not apply the second-step balancing test of *WLF I* to the reports." *Id*.

Here, the requested subpoenas were issued as part of HPSCI's investigative effort and such issuance, though undeniably a form of Committee action, was so preliminary to any final recommendation that this action lacks the legal significance to constitute a "public record" to which the right of public access attaches. *See WLF II*, 89 F.3d at 906 (concluding that requested documents of Advisory Group to U.S. Sentencing Commission were "made up entirely of materials that are, if not preliminary, then merely incidental to the only official action the Advisory Group was authorized to take, *viz*., recommending sentencing guidelines to the Commission," and did not qualify as "public records"). Consequently, plaintiff has no right to disclosure of these subpoenas under the common-law right of access.[5]

### B.   Speech or Debate Clause

Plaintiff's demand for disclosure of the requested subpoenas, and responses thereto, not only fails under the common-law right of access but is also barred by the Speech or Debate Clause, which provides that "Senators and Representatives . . . for any Speech or Debate in either

---

[5] While not necessary to address, the requested disclosure of the subpoenas would also likely fail the second part of the two-part test for public access, which requires "balanc[ing] the government's interest in keeping the document secret against the public's interest in disclosure." *WLF II*, 89 F.3d at 905. The D.C. Circuit has made clear, in denying enforcement of civil subpoenas demanding disclosure of congressional investigative files, that Congress may "insist on the confidentiality of investigative files," *see Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 420 (D.C. Cir. 1995), which in the context of the instant case easily covers the requested subpoenas.

15

House . . . shall not be questioned in any other Place." U.S. CONST., art. I, § 6, cl. 1. This Clause creates "absolute immunity from civil suit." *Rangel v. Boehner*, 785 F.3d 19, 23 (D.C. Cir. 2015) (citing *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502–03 (1975)). The purpose of such immunity "is to protect the individual legislator, not simply for his own sake, but to preserve the independence and thereby the integrity of the legislative process." *United States v. Brewster*, 408 U.S. 501, 524 (1972); *see also Eastland*, 421 U.S. at 502 ("The purpose of the Clause is to insure that the legislative function the Constitution allocates to Congress may be performed independently."); *Rangel*, 785 F.3d at 23 ("The Clause reflects the Founders' belief in legislative independence."). As it safeguards legislative independence, the Clause also "'serves the additional function of reinforcing the separation of powers so deliberately established by the Founders.'" *Eastland*, 421 U.S. at 502 (quoting *United States v. Johnson*, 383 U.S. 169, 178 (1966)).

"Without exception," the Supreme Court "ha[s] read the Speech or Debate Clause broadly to effectuate its purposes." *Eastland*, 421 U.S. at 501. Thus, "although the Clause speaks of 'Speech or Debate,' it extends further to all 'legislative acts.'" *Rangel*, 785 F.3d at 23 (quoting *Doe v. McMillan*, 412 U.S. 306, 312 (1973)). Indeed, when "it is determined that Members are acting within the 'legitimate legislative sphere[,]' the Speech or Debate Clause is an absolute bar to interference." *Eastland*, 421 U.S. at 503 (quoting *McMillan*, 412 U.S. at 314)).

To be considered within the "legislative sphere" for purposes of the Clause, a given activity "must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the

Constitution places within the jurisdiction of either House." *Gravel v. United States*, 408 U.S. 606, 625 (1972). Under this standard, "authorizing an investigation pursuant to which . . . materials were gathered" qualifies for protection, *McMillan*, 412 U.S. at 313, as does "[t]he issuance of a subpoena pursuant to an authorized investigation," *Eastland*, 421 U.S. at 505, both of which, the Supreme Court has explained, are "indispensable ingredient[s] of lawmaking," *id*. The Clause applies to a legislative act even when "a plaintiff alleges that [the act] violated the House Rules . . . or even the Constitution." *Rangel*, 785 F.3d at 24 (first citing *Kilbourn v. Thompson*, 103 U.S. (13 Otto) 168, 203 (1880); and then citing *McMillan*, 412 U.S. at 312–13). "Such is the nature of absolute immunity, which is—in a word—absolute." *Id*. (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 54–55 (1998).[6]

Applying these standards to the HPSCI subpoenas at issue in this case, make amply clear that the Speech or Debate Clause bars plaintiff's suit. Though the aim of an impeachment inquiry is not to enact legislation, such inquiry is undoubtedly a "matter[] which the Constitution places within the jurisdiction of either House." *Gravel*, 408 U.S. at 625. Indeed, the Constitution specifically entrusts the House of Representatives with "the sole Power of Impeachment." U.S. CONST., art. I, § 2, cl. 5. For purposes of Speech or Debate immunity, the subpoenas issued in connection with an impeachment inquiry fall within this special "legislative sphere," *McMillan*, 412 U.S. at 312 (citing *Gravel*, 408 U.S. at 624–25), and meet the standard

---

[6] Thus, plaintiff's suggestion that the HPSCI subpoenas were "issued without any lawful basis," *see* Compl. ¶ 11, an allegation defendants deny, *see* Defs.' Mem. at 9–10, is immaterial to the analysis. *See McMillan*, 412 U.S. at 312–13 (finding that Speech or Debate immunity applies even to conduct that, "if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes"); *Rangel*, 785 F.3d at 24. In any event, the issuance of subpoenas "by a committee acting, as here, on behalf of one of the Houses," is perfectly appropriate since, as the Supreme Court has explained, "[w]ithout such power the Subcommittee may not be able to do the task assigned to it by Congress. To conclude that the power of inquiry is other than an integral part of the legislative process would be a miserly reading of the Speech or Debate Clause in derogation of the integrity of the legislative process." *Eastland*, 421 U.S. at 505 (internal quotations and citation omitted).

17

articulated in *Gravel,* because the subpoenas were "an integral part of [a] deliberative and communicative process[]," *Gravel*, 408 U.S. at 625, underlying a matter constitutionally entrusted to the House.  As the Eleventh Circuit explained in reaching this same conclusion: "impeachment is viewed as a legislative activity in the sense that it is one of the 'other matters which the Constitution places within the jurisdiction of either House.'"  *In re Request for Access to Grand Jury Materials Grand Jury No. 81-1, Miami*, 833 F.2d 1438, 1446 (11th Cir. 1987) (quoting *Gravel*, 408 U.S. at 625); *see also Porteous v. Baron*, 729 F. Supp. 2d 158, 165 (D.D.C. 2010) (quoting *Gravel*, 408 U.S. at 625) ("The trial of impeachable offenses is, of course, a matter that the Constitution places within the *sole* jurisdiction of the Senate . . . and the use of relevant testimony at or in preparation for that trial is, without a doubt, 'an integral part of the deliberative and communicative processes by which Members participate' in the trial proceedings." (internal citations omitted)).

      Plaintiff asserts three counterarguments, none of which is persuasive.  First, plaintiff argues that the Speech or Debate Clause should not apply because "[t]his case is only about the disclosure of public records," rather than "about whether Defendants can be held responsible for their actions in the issuance of the subpoenas."  Pl.'s Opp'n at 4.  This argument misapprehends the nature of Speech or Debate immunity, which, as the D.C. Circuit has made plain, is "absolute."  *Rangel*, 785 F.3d at 24.  "The prospect of civil liability lessens the ability of the Members of Congress to 'represent the interests of their constituents,' and litigation itself 'creates a distraction and forces Members to divert their time, energy, and attention from their legislative tasks[.]'"  *Id*. (first quoting *Powell v. McCormack*, 395 U.S. 486, 503 (1969); and then quoting *Eastland*, 421 U.S. at 503)).  To protect against such diversions, "the clause not only provides a defense on the merits but also protects a legislator from the burden of defending

18

himself." *Powell*, 395 U.S. at 502–03. Thus, the fact that plaintiff seeks disclosure, rather than to establish criminal or civil liability, has no bearing on the application of the Clause to bar this lawsuit. This principle was well articulated in *United States v. Peoples Temple of the Disciples of Christ*, 515 F. Supp. 246 (D.D.C. 1981), in which the court quashed a subpoena for documents concerning a House committee's investigation of a congressman's death in Guyana, explaining that: "Once it is determined . . . that the [Members'] actions fall within the legitimate legislative sphere, judicial inquiry is at an end. Otherwise, Members of Congress conducting investigations would be forced to consider at every turn whether evidence received pursuant to the investigation would subsequently have to be produced in court. This would imperil the legislative independence protected by the Clause." 515 F. Supp. at 249 (internal quotations omitted).

Second, plaintiff questions the application of Speech or Debate immunity on the grounds that impeachment proceedings are "judicial" rather than "legislative." Pl.'s Opp'n at 4–5. This argument falls far short.[7] Plaintiff's brief citation, Pl.'s Opp'n at 4, to this Court's decision in *In re Application of the Committee on the Judiciary, U.S. House of Representatives, for an Order Authorizing Release of Certain Grand Jury Materials* ("*In re Committee on the Judiciary*"), 414 F. Supp. 3d 129 (D.D.C. 2019), *aff'd*, 951 F.3d 589 (D.C. Cir. 2020), *cert. granted sub nom. Dep't of Justice v. House Comm. on Judiciary*, No. 19-1328, 2020 WL 3578680 (mem.) (July 2, 2020), finding that a Senate impeachment trial was "judicial" within the meaning of Federal Rule of Criminal Procedure 6(e), *id.* at 156, is inapposite. *In re Committee on the Judiciary* did not

---

[7] Pointing to the then-pending grant of *certiorari* in *Trump v. Mazars USA, LLP*, 940 F.3d 710 (D.C. Cir. 2019), *cert. granted*, 140 S. Ct. 660 (Dec. 13, 2019), *rev'd*, 140 S. Ct. 2019 (2020), plaintiff suggests that "[t]he outcome of the pending U.S. Supreme Court case will likely impact the question of whether impeachment is a legislative activity and whether Speech or Debate Clause protection applies." Pl.'s Opp'n at 5. *Mazars* concerned the validity of a legislative subpoena issued by the House Oversight Committee, *see* 940 F.3d at 723–24, not whether an impeachment inquiry falls within the "legislative sphere," *McMillan*, 412 U.S. at 312, for purposes of Speech or Debate Clause immunity and, consequently, the Supreme Court's resolution of that case, *see* 140 S. Ct. 2019, has no bearing here.

address, and is not relevant to, the meaning of the term "legislative sphere" for purposes of the Speech or Debate Clause. *See id.* at 149–57.

Third and finally, plaintiff cites—only in the Complaint and without further explanation—*Pentagen Technologies*, to assert that "no legislative purpose affording Speech and Debate Clause immunity applies." Compl. ¶ 10. This reliance is entirely misplaced. After all, the *Pentagen Technologies* court ruled that the requested congressional investigative reports at issue in that case were "protected from compulsory disclosure by the Speech or Debate Clause of the Constitution," 20 F. Supp. 2d at 45, and neither made contrary findings nor drew any distinctions as to investigative materials collected in the context of an impeachment inquiry.

Accordingly, the Speech or Debate Clause bars this lawsuit because the subpoenas at issue were an "integral part" of an impeachment inquiry, a "matter which the Constitution places within the jurisdiction of either House," *Gravel,* 408 U.S at 625. This case must therefore be dismissed.

## IV.   CONCLUSION

For the reasons set forth above, plaintiff has no right to demand disclosure of the requested subpoenas and responses thereto issued by HPSIC in connection with the impeachment inquiry of the President, and the Speech or Debate Clause of the Constitution provides immunity from suit to defendants. This case is therefore dismissed with prejudice.

An Order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: July 27, 2020

_____
BERYL A. HOWELL
Chief Judge